IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA PERKINS

    Plaintiff,

v.                                                                                      CASE NO.:

MADEIRA SOCIAL GROUP, LLC d/b/a
THE REEF BAR AND GRIIL

    Defendant.

_____/

## COMPLAINT

Plaintiff, JESSICA PERKINS (hereinafter "Plaintiff"), by and through her undersigned counsel, herein sues Defendant, MADEIRA SOCIAL GROUP, LLC d/b/a THE REEF BAR AND GRILL, (hereinafter "Defendant" or "Madeira"), for unlawful sexual harassment and unlawfully terminating her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, (collectively "Title VII"), and the Florida Civil Rights Act §§760.01-760.11, Florida Statutes ("FCRA").

## JURISDICTION AND VENUE

1.    This action is brought by Plaintiff, as a former employee of Madeira, and involves claims for violations of a federal statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, (collectively "Title VII"), and the Florida Civil Rights Act §§760.01-760.11, Florida Statutes ("FCRA").

2. This Court has subject matter jurisdiction over Plaintiff's sexual harassment and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, (collectively "Title VII").

3. This Court has subject matter jurisdiction over Plaintiff's retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

4. This Court has original jurisdiction over Plaintiff's claim under the Florida Civil Rights Act §§ 760.01-760.11, Florida Statutes ("FCRA"), pursuant to 28 U.S.C. § 1367.

5. This Court has supplemental and pendent jurisdiction over Plaintiff's state law claims under the Florida Civil Rights Act §§ 760.01-760.11, Florida Statutes ("FCRA"), pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant Madeira as it operates substantial business in Pinellas County, Florida within this district. Plaintiff worked for Defendant Madeira at 14705 Gulf Blvd., Madeira Beach, Florida 33708.

7. Venue is proper in this Circuit because Defendant operates a physical office in this Circuit and the alleged sexual harassment occurred in this District.

8. All conditions precedent to the filing of this action have been performed, and the Plaintiff has received a right to sue from the EEOC.

**PARTIES**

9. Plaintiff, Jessica Perkins, is a resident of Essex County, New York and at all times material, Plaintiff was employed with Defendant and performed her job duties at Defendant's business located at 14705 Gulf Blvd., Madeira Beach, FL 33706.

10. Defendant, MADEIRA, is a for-profit corporation with primary business offices located in Madeira Beach, Florida and is authorized to conduct business in the state of Florida, with its principal place of business located at 14705 Gulf Blvd., Madeira Beach, FL 33706. Defendant

may be served through its registered agent Matthew Vario at 678 75th Ave., St. Pete Beach, Florida 33706.

11. Defendant employed 25 or more persons during the timeframe of Plaintiff's employment and a covered employer under the Federal Civil Rights Act and Florida Civil Rights Act.

**GENERAL FACTUAL BACKGROUND AND ALLEGATIONS**

12. Plaintiff was employed by the Defendant as a Server from January 2022 until the formal date she was terminated: November 8, 2022.

13. As a Server, Plaintiff's job duties included taking orders, serving food and drinks, and cleaning the restaurant.

14. Plaintiff was supervised by Shift Manager, Tyler Hipsley throughout her term of employment.

15. On multiple occasions, Mr. Hipsley tasked Plaintiff with finding him sexual partners with other female staff and employees, which Mr. Hipsley termed as his, "mash." Hipsley would call the girls "mash" as in a "side piece" because he had a wife, who at some time during all these events was pregnant.

16. Mr. Hipsley made it explicitly clear that if Plaintiff did not comply his demands of finding or arranging sexual partners for him with female employees, then he would terminate her employment.

17. Indeed, Hipsley continuously throughout Plaintiff's employment, pressured Plaintiff to approach other female employees for the purpose of assisting him to engage in sexual relations with these other female employees.

18. As early as January 11, 2022, Plaintiff's supervisor, Mr. Hipsley sent her text messages requesting and in essence placing orders for the women he expected Plaintiff to solicit for him:

3

"cute skinny ones – color don't matter", with "booty nice teeth – small boobs," "send me one now."

19. In the same thread, Plaintiff asked Mr. Hipsley if that would make her his pimp and he responded that, "that would make you THEIR pimp-lol." Mr. Hipsley further instructed Plaintiff to, "Just get me a cute one-send me a pick. Lol."

20. In March of 2022, Mr. Hipsley sent Plaintiff a text stating: "I wanna see that girl naked. Lol. I'm gonna need pics!!." He continued, "Just give her my number and tell her to just start sending me some! Hahaha."

21. In later text messages Mr. Hipsley told Plaintiff that, "I need to find me some mash before I fire you." The thread continued by Mr. Hipsley stating, "Find me something damnit/that was the only task you were supposed to do," and "Imma slap you for not doing your job and finding me mash. Imma slap you straight." Plaintiff responded, "So im a server and a pimp," and Mr. Hipsley confirmed by stating, "I pimp you out to the restaurant so you can make some money-your job is to get me mash."

22. On August 30, 2022, Mr. Hipsley texted Plaintiff, "Why do you think I keep you around. Be more amazing if you got me mash."

23. On September 2, 2022, at 5:15p.m., Mr. Hipsley texted Plaintiff that she was supposed to be there at 5 and that she was late again. Plaintiff told him that she was almost there. Mr. Hipsley then texted Plaintiff, "Once again – you owe me mash," "Yeah you better find me a SLUT otherwise I'm just gonna punish you and keep writing you up."

24. On September 18, 2022, Mr. Hipsley texted Plaintiff, "You better fucking get this mash for me or I swear to god im firing you."

4

25. On October 10, 2022, Plaintiff texted Mr. Hipsley to ask him if she could cover for a co-worker named Morgan. Mr. Hipsley responded by stating, "Yes, ONLY if you get her to be my mash. I mean I still can't believe you haven't worked that out for me yet."

26. Plaintiff made numerous complaints to Defendant about the actions and conduct of Hipsley, but the same were ignored.

27. Thereafter, Hipsley subjected Plaintiff to threats of termination of her employment if she didn't follow his commands and cooperate in attempting to get him hooked up with the female employees.

28. Upon information and belief, numerous female employees presented formal and informal complaints, verbal and/or in writing about the offensive actions and conduct of Hipsley preceding Plaintiff's termination of employment.

29. Hipsley subjected other female staff to sexually harassing conduct and communications prior to Plaintiff's unlawful and retaliatory termination of employment.

30. Tyler knew that the Plaintiff was homeless and using his power and authority as her manager, preyed upon her situation to pressure her and intimidate her into compliance with his unlawful sexual harassment and pursuits of other female employees.

31. Hipsley asked Plaintiff to "hook him up" with women at whatever hotel she was staying at.

32. Plaintiff was offended by Hipsley's actions and conduct but felt powerless and fearful to do anything in opposition in fear of losing her job.

33. Hipsley's sexually offensive and harassing conduct continued for almost an entire year.

34. Hipsley escalated his pressure intimidation against Plaintiff by demanding that she assist him in setting up sexual encounters with any new server he hired.

35. Hipsley's brother-in-law would come and work when he was on break from school and would beg Plaintiff to not let Hipsley's wife find out.

36. Thereafter, Hipsley subjected Plaintiff to threats of termination of her employment if she didn't follow his commands and cooperate in attempting to get him hooked up with the female employees.

37. Plaintiff witnessed numerous female employees being fired and from inquiring, heard that Hipsley either forced himself on them, coerced them into sex and sexually harassed them so many times that Hipsley fired them so they wouldn't say anything to the ownership.

38. The last female employee Hipsley tried to push Plaintiff to arrange a sexual arrangement with was Morgan. Plaintiff ended up telling her what Hipsley was saying and how he was pressuring her to help him with his intended sexual advances.

39. Plaintiff also learned that Hipsley had already made numerous sexual advances on Morgan and had sexually harassed her but, he just would not stop his pursuit of Morgan.

40. As of the time Plaintiff was terminated, Defendant was well informed and aware that Hipsley had engaged in sexually harassing and unlawful conduct against one or more other female employees, but took no actions to prevent, intervene or stop the conduct from continuing, nor to warn the other female staff about Hipsley's offensive conduct.

41. The owner, managing member and highest-ranking company officer and manager, MATTHEW VARIO, then fired Tyler Hipsley, but Plaintiff's employment was not reinstated, including after Plaintiff requested her reinstatement by Vario.

42. Upon information and belief, Hipsley had previously been fired from 3 or 4 different employers and establishments for sexual harassment of women.

43. Vario, and Defendant had no concern or care about the well-being and health and safety of its female employees.

44. Defendant ratified, acquiesced and covered up known and reported incidents of sexual harassment by Hipsley to female employees as well as condoned his conduct.

45. When Plaintiff expressed and made clear to Hipsley that she was refusing to assist him with attempts to have sex or engage in sexual relations with other female employees, he made it abundantly clear that he would be and did fire Plaintiff in retaliation for her opposition.

46. Upon information and belief, at some point, there remained just 3 female employees still employed there that Hipsley had hired.

47. During the term of Plaintiff's employment to the present day, many female employees resigned or quit Defendant's employment due to Hipsley's sexual harassment, sexually offensive comments, and the creation of a hostile work environment, and defendant's refusal to take actions to prevent or stop the harassment it knew was going on.

**COUNT I RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3**

48. Plaintiff re-alleges and incorporates paragraphs 1- 47 as fully set forth herein.

49. Plaintiff is a female employee, subject to the protections of 42 U.S.C. § 2000e-3

50. At all times relevant to this action, Plaintiff was an employee of the Defendant within the meaning of 42 USCS § 2000e(f); 42 USCS § 2000e(b) and the Florida Civil Rights Act.

51. The Defendant Madeira is an employer as that term is defined in 42 U.S.C. § 2000e(b).

52. Defendant employs fifteen (15) or more employees for each working day as part of its daily operation.

53. The Defendant engaged in retaliatory conduct towards Plaintiff such that she was deprived of her rights under 42 U.S.C. § 2000e-3.

54. Plaintiff complained about, and opposed what she reasonably believed constituted sexual harassment, which took place at the Reef Bar and Grill.

55. Plaintiff engaged in protected activity in that she complained of and objected to her direct superior Hipsley's sexually offensive conduct and communications and opposed and refused to comply with his instructions, orders and commands.

56. Thereafter, Defendant JGC engaged in adverse actions:

57. By subjecting her to additional harassment,

58. By falsely accusing Plaintiff of a performance related action or act of misconduct, and

59. By terminating her.

60. Plaintiff's protected activities and Defendant JGC's adverse actions are causally related.

61. Defendant Madeira knew or should have known that Plaintiff was being subjected to sexually offensive and harassing conduct by its manager, Hipsley.

62. Defendant Madeira knew or should have known that Plaintiff was being subjected to retaliation by its manager, Hipsley for refusing to go along with and follow his sexually offensive and unlawful actions and conduct.

63. Plaintiff voiced and communicated opposition to Hipsley about his sexually offensive actions, conduct and statements, and otherwise refused to comply with his instructions, commands and orders to assist him with trying to get involved sexually with other female employees.

64. Defendant retaliated against Plaintiff for her protected activities.

65. Despite said knowledge, Defendant Madeira failed to take any remedial action, and terminated Plaintiff.

66. After termination, Plaintiff directly communicated with the managing member, and majority owner Matthew Vario and reported all the prior actions and conduct of Hipsley, and that

Hipsley had caused her to be fired because of her opposition to his unlawful, sexual harassment and sexually harassing conduct.

62. Defendant refused to reinstate plaintiff, listen to her, investigate her claims of retaliation and false and pretextual reasons for termination.

63. Plaintiff suffered damages as a result of Defendant Madeira's conduct, by and through its agents, employees, and/or representatives.

64. As a direct and proximate result of the intentional retaliatory acts, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment-related benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

65. Defendant's actions or inactions are based upon malice or reckless indifference to the protected rights of Perkins, entitling her an award of punitive damages. Defendant's actions were extreme and outrageous and Defendant knew or should have known that Plaintiff would be harmed by Hipsley's history and his conduct towards female employees.

66. Plaintiff seeks general, compensatory, and punitive damages, front pay or reinstatement, back pay, prejudgment and post-judgment interest, and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

**COUNT II RETALIATION IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT, FLA STAT. § 760.10**

67. Plaintiff re-alleges and incorporates paragraphs 1-47 as fully set forth herein.

68. Plaintiff is a female employee, subject to the protections of section 760.10, Florida Statutes.

69. Defendant Maderia is an employer as that term is defined in section 760.02(7), Florida Statutes.

70. Defendant Madeira employs fifteen (15) or more employees for each working day as part of its daily operation.

71. Plaintiff complained about, and opposed what she reasonably believed constituted sexual harassment, which took place at The Reef Bar and Grill.

72. The Defendant engaged in retaliatory conduct towards Plaintiff such that she was deprived of her rights under 42 U.S.C. § 2000e-3.

73. Plaintiff complained about, and opposed what she reasonably believed constituted sexual harassment, which took place at the Reef Bar and Grill.

74. Plaintiff engaged in protected activity in that she complained of and objected to her direct superior Hipsley's sexually offensive conduct and communications and opposed and refused to comply with his instructions, orders and commands.

75. Thereafter, Defendant Maderia engaged in adverse actions:

   a. By subjecting her to additional harassment,

   b. By falsely accusing Plaintiff of a performance related action or act of misconduct, and

   c. By terminating her.

76. Plaintiff's protected activities and Defendant JGC's adverse actions are causally related.

77. Defendant Madeira knew or should have known that Plaintiff was being subjected to sexually offensive and harassing conduct by its manager, Hipsley.

78. Defendant Madeira knew or should have known that Plaintiff was being subjected to retaliation by its manager, Hipsley for refusing to go along with and follow his sexually offensive and unlawful actions and conduct.

79. Plaintiff voiced and communicated opposition to Hipsley about his sexually offensive actions, conduct and statements, and otherwise refused to comply with his instructions, commands and orders to assist him with trying to get involved sexually with other female employees.

80. Defendant retaliated against Plaintiff for her protected activities and opposition to the sexual harassment and sexually offensive conduct placed upon her by Defendant's manager.

81. Despite knowledge of its manager sexually harassing female employees, engaging in sexually offensive conduct including but not limited to Defendant's Manager Hipsley procuring and pressuring subordinate female employees to engage in sex acts and relations with him , Defendant Madeira failed to take any remedial action, and terminated Plaintiff.

82. After termination, Plaintiff directly communicated with the managing member, and majority owner Matthew Vario and reported all the prior actions and conduct of Hipsley, and that Hipsley had caused her to be fired because of her opposition to his unlawful, sexual harassment and sexually harassing conduct.

83. Defendant refused to reinstate plaintiff, listen to her, investigate her claims of retaliation and false and pretextual reasons for termination.

84. Plaintiff suffered damages as a result of Defendant Madeira's conduct, by and through its agents, employees, and/or representatives.

85. As a direct and proximate result of the intentional retaliatory acts, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment-related benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

Defendant's actions or inactions are based upon malice or reckless indifference to the protected rights of Perkins, entitling her an award of punitive damages; Defendant's actions were extreme

and outrageous and Defendant knew or should have known that Plaintiff would be harmed by Hipsley's history and his conduct towards female employees.

86. Plaintiff seeks general, compensatory, and punitive damages, front pay or reinstatement, back pay, prejudgment and post-judgment interest, and reasonable attorney's fees and costs pursuant to section 760.11 (5).

**COUNT III – UNLAWFUL SEXUAL HARRASSMENT IN VIOLATION OF TITLE VII**

87. Plaintiff adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

88. Plaintiff is a female employee, subject to the protections of 42 U.S.C. § 2000e-3.

89. At all times relevant to this action, Plaintiff was an employee of the Defendant within the meaning of 42 USCS § 2000e(f); 42 USCS § 2000e(b) and the Florida Civil Rights Act.

90. Defendant discriminated against Plaintiff by subjecting her to sexually offensive and harassing conduct solely because of her gender and which other male employees were not subject to.

91. The obligations, duties and responsibilities defendant created for plaintiff in assisting manager Hipsley with his sexual harassment of female employees was a condition and job responsibility which male employees were not subject to.

92. The terms and conditions of employment for Plaintiff were not equal to male employees because of her gender.

93. Plaintiff suffered harassment, intimidation, humiliation, and fear at the hands of Defendant and its manager Hipsley.

94. Defendant knew that Hipsley was a sexual predator and had sexually harassed other female employees and had routinely engaged in sexually offensive conduct and communications.

95. Defendant knew or should have known that Hipsley had a history of the same unlawful, and sexually offensive and harassing conduct at other prior establishments and employers.

96. Defendant willfully exposed Plaintiff to the sexually harassing, offensive and unlawful conduct by its manager, Hipsley.

97. As a direct result of Defendant's actions, she suffered loss of employment opportunities, financial and emotional harm, and harm which continues to this day.

**COUNT IV – SEXUAL HARRASSMENT IN VIOLATION OF FLORIDA CIVIL RIGHTS ACT, FLA STAT. § 760.10**

98. Plaintiff adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

99. Plaintiff is a female employee, subject to the protections of section 760.10, Florida Statutes.

100. Defendant Maderia is an employer as that term is defined in section 760.02(7), Florida Statutes.

101. Defendant discriminated against Plaintiff by subjecting her to sexually offensive and harassing conduct solely because of her gender and which other male employees were not subject to.

102. The obligations, duties and responsibilities defendant created for plaintiff in assisting manager Hipsley with his sexual harassment of female employees was a condition and job responsibility which male employees were not subject to.

103. The terms and conditions of employment for Plaintiff were not equal to male employees because of her gender.

104. Plaintiff suffered harassment, intimidation, humiliation, and fear at the hands of Defendant and its manager Hipsley.

105. Defendant knew that Hipsley was a sexual predator and had sexually harassed other female employees and had routinely engaged in sexually offensive conduct and communications.

106. Defendant knew or should have known that Hipsley had a history of the same unlawful, and sexually offensive and harassing conduct at other prior establishments and employers.

107. Defendant willfully exposed Plaintiff to the sexually harassing, offensive and unlawful conduct by its manager, Hipsley.

108. Defendant's conduct was extreme and outrageous, and that its actions and conduct, including failure to act or intervene, subjected Plaintiff and other female employees to sexual harassment.

109. As a direct result of Defendant's actions described herein, Plaintiff suffered loss of employment opportunities, financial and emotional harm, and harm which continues to this day.

WHEREFORE, Perkins prays for relief as follows: an award of all compensatory damages from the injuries that Perkins has sustained as a result of Defendant's conduct, including front pay or reinstatement, back pay, damages for lost compensation and job benefits that would have been received but for the retaliatory actions of Defendant; damages for pain and suffering and mental anguish, prejudgment and post judgment interest, as provided by law, exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future unlawful conduct; reasonable attorney's fees and costs pursuant to section 760.11 (5) and 42 U.S.C. § 2000e-5(k); and such other relief as the Court deems just and proper.

Plaintiff requests trial by jury.

Respectfully submitted this 28th day of August 2023.

*/s/ Mitchell L. Feldman, Esquire*
Mitchell L. Feldman, Esquire
FELDMAN LEGAL GROUP
FBN: 080349

>6916 W. Linebaugh Ave. Suite 101
>Tampa, FL 33625
>(P) 813-639-9366 (F) 813-639-9376
>mfeldman@flandgatrialattorneys.com
>*Lead Attorney for Plaintiff*